ELLEN URQUHART, Appellant, v. THE CITY OF OGDENSBURGH, Respondent.

Where, by the charter of a municipal corporation, power is conferred upon it to direct the manner of, and superintend the making and repairing of sidewalks, and the exercise of this power, in a manner specified in the charter, is not left discretionary, but is made imperative, an assent upon the part of the corporation to a substantial and unauthorized change in the slope and manner of construction of a sidewalk may not be presumed from a simple omission on its part, after due notice thereof, to object to the change.

While, therefore, the corporation may not be held liable for any defect in the original plan, and while it may adopt a sidewalk already constructed, or rebuild upon a new plan, and thus secure to itself immunity, this must be done by proper corporate action; and where a change in the grade or slope has been made by the owner of adjoining premises in rebuilding, making the sidewalk dangerous for travel, an omission on the part of the corporation, after notice, to take any action in reference to the matter is not a defense in an action brought against it to recover damages for injuries caused by the defect.

Urquhart v. City of Ogdensburgh (91 N. Y. 67), distinguished and limited.

(Argued June 18, 1884; decided November 25, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made December 3, 1883, which affirmed a judgment in favor of defendant, entered upon a verdict.

The nature of the action and the material facts are stated in the opinion.

The case is reported upon a former appeal in 91 N. Y. 67.

*Leslie W. Russell* for appellant. The city charter (Chap. 335 of the Laws of 1868, as amended by chap. 406 of the Laws of 1873) renders the duty of building and repairing sidewalks imperative upon the city (§ 20). (*Conrad* v. *Ithaca*, 16 N. Y. 159; *Diveny* v. *City of Elmira*, 51 id. 506, 513; *Hutson* v. *The Mayor*, 9 id. 163; *Clemence* v. *City of Auburn*, 66 id. 334; *Hines* v. *City of Lockport*, 50 id. 237-239.) The city having once established the grade and plan of

the walk, and having constructed it upon that plan, it was its duty to see that the same was adhered to; the construction and repair and maintenance of the walk, pursuant to the plan, were ministerial. (*Rochester White Lead Co.* v. *Rochester*, 3 N. Y. 464; *Conrad* v. *Ithaca*, 16 id. 158; *Mills* v. *City of Brooklyn*, 32 id. 489, 500; *Requa* v. *City of Rochester*, 45 id. 129; *McCarthy* v. *City of Syracuse*, 46 id. 194; *Nims* v. *City of Troy*, 59 id. 500; *Clemence* v. *City of Auburn*, 66 id. 334; *Hines* v. *City of Lockport*, 50 id. 239; *Vogel* v. *The Mayor*, 92 id. 10; *Saulsbury* v. *Ithaca*, 94 id. 27.) A fact, once proved to exist, is presumed to continue until some evidence to the contrary is offered. (*Wilkins* v. *Earle*, 44 N. Y. 172.) Whether an alleged defect is a case of non-repair is a question of fact for the jury, and to determine it they may take into account the location of the walk, the season of the year, the place and manner of the accident, and all the circumstances surrounding it. (Dill. on Mun. Corp. [3d ed.], 1025, 1029, 1034; *Hewson* v. *New Haven*, 34 Conn. 140; *Howard* v. *North Bridgewater*, 16 Pick. 189; *Knupfle* v. *Knickerbocker Ins. Co.*, 84 N. Y. 488; *McGrath* v. *N. Y. C. Co.*, 63 id. 522; *Providence* v. *Clapp*, 17 How. [U. S.] 161.) Under a general denial any evidence may be admitted to controvert any essential portion of the plaintiff's case, but not to establish a defense, based purely on new matter. (*Weaver* v. *Barden*, 49 N. Y. 286; *Clemence* v. *Auburn*, 66 id. 339; *Clifford* v. *Dam*, 81 id. 52, 57.) The plaintiff's offer to show that after the accident the sidewalk was removed, was erroneously excluded. (*McGrath* v. *N. Y. C. Co.*, 63 N. Y. 522; *Sewell* v. *City of Cohoes*, 75 id. 45; *Morrell* v. *Peck*, 88 id. 398.)

*Edward C. James* for respondent. If plaintiff's fall was occasioned by the ice formed upon the sidewalk by the water spilled upon it an hour or two previously, she cannot recover. (76 N. Y. 329, 336; 47 id. 639.) The court submitted to the jury the question of plaintiff's concurring negligence, instructing them that she could not recover if she was injured in con-

sequence of her own lack of care and the general verdict found for the defendant settled in its favor every litigated question of fact. (43 Barb.; affirmed, 41 N. Y. 620; Code, § 1337; 87 N. Y. 514; 50 id. 53, 55; 53 id. 25, 27; 67 id. 52, 55; 76 id. 52, 55.) The common council, having the power to order the old sidewalk to be rebuilt on a new plan, had the corresponding right, under the decision of this court, in this case, to permit the adjoining owner to rebuild it on the new plan, and adopt it by acquiescence after it was completed. (*Lansing* v. *Toolan,* 37 Mich. 152; *Hiller* v. *Sharon Springs,* 28 Hun, 344; *Saulsbury* v. *Ithaca,* 94 N. Y. 27.) A general exception to every refusal and modification made by the court in the charge, even if taken publicly, could not be available. (*Smedes* v. *B. & R. B. R. R. Co.,* 88 N. Y. 14, 23; *Tweed* v. *Davis,* 1 Hun, 252.) It was the duty of the plaintiff's counsel at the close of the charge to call the attention of the court to any one of the requests as to which he required more specific instructions. (*Walsh* v. *Kelly,* 40 N. Y. 556; *Bell* v. *McMaster,* 16 Weekly Dig. 470; *Zabriskie* v. *Smith,* 13 N. Y. 322; Code, § 995; 45 N. Y. Super. Ct. 240.)

DANFORTH, J. In November, 1879, the plaintiff fell upon the sidewalk, on Lake street, in the city of Ogdensburgh, and was injured. She brought this action for compensation. Upon the trial the case was given to the jury as one in which the evidence would permit a finding that the plaintiff's injuries were caused by the unsafe and dangerous condition of the sidewalk, and they were directed to inquire whether the accident was owing to a defect caused by the plan or grade of the walk as designed or approved by the defendant or its negligence in reparation according to that plan. If the former, the court said no recovery could be had, but if the latter, the city would be liable. And this doctrine of non-liability was exhibited very clearly by the statement of the trial judge that the common council had the right to adopt the grade which had been created or made by the owner of the lot; that approval might be inferred from its silence, and that "the city is not liable if the

common council have omitted to disapprove of the grade."
These instructions are, it is claimed, justified by the decision
of this court upon a former appeal. (91 N. Y. 67.) It now ap-
peared, however, by the defendant's records, that a sidewalk on
the street in question, and embracing among others the place
where the accident occurred, was ordained by the trustees of the
village of Ogdensburgh in October, 1855, to be at least ten feet
wide, with two inches fall toward the carriage-way from a cer-
tain fixed level, to be built of plank or stone of a quality and
after a manner of arrangement and construction prescribed with
much detail in their resolution. The walk was built of wood
in pursuance of these directions, and as appears of record the
work was formally accepted by the defendant in December,
1856. It was conceded on the trial that there was no resolu-
tion or other action in the city or village records in relation to
the sidewalk after April, 1856, except those that were put in
evidence. And it does not appear that any thing further was
done by the city in regard to it.

It was, however, in evidence that before the year 1875, the
grade of the walk at this place was changed by the owners of
the premises upon more than one occasion, precisely to what
extent is not shown, but some years before the accident, and
about 1875, the walk seems to have been reconstructed by the
then owner, with planks varying in length from five feet seven
inches to seven feet four inches, placed at a different and much
greater angle from that named in the resolution of 1865, and
so constructed as to give a pitch of seven inches and three-
eighths of an inch to the walk thus narrowed instead of a fall
of two inches in ten feet. In other respects, both as to mate-
rial and manner of adjusting it, changes were made so that the
walk settled and became uneven. It was more sloping than
other walks in this vicinity, and " three or four inches different
from those on either side;" it was difficult to walk on it, and
its condition was such as made it proper for consideration by
the jury.

But the learned trial judge at the request of the defendant's
counsel, under the plaintiff's exception, instructed the jury that

the defendant cannot be held liable for any fault in the plan of the walk, and hence not liable for the steepness of the slope or incline from the platform to the curbstone ; and again : " that if the slope caused the plaintiff to fall, she cannot recover ; " and again : " that the whole duty of the defendant was discharged by keeping the walk in ordinarily good repair, according to the plan on which it was rebuilt," and being requested by the plaintiff's counsel to instruct the jury : First, " that the plan once adopted and the work constructed thereon, an unauthorized change, whereby it became unsafe, after reasonable time for notice, the city may be liable as for negligence," declined so to charge, on the ground that the evidence raises the presumption that the common council assented to the change. Second, That " the exercise of judicial discretion is usually an affirmative act.   Once exercised the ministerial duty of discretion and repair is not presumed to have changed into a re-exercise of that judicial discretion by a mere sufferance of a negligent repairing without some deliberate or authoritative act of the city officials to indicate such departure."   This also was declined.

Some criticism is made by respondent's counsel as to the manner in which these requests were presented to the court and the disposition made of them, but they appear in the case to have been presented to the trial judge before the charge, and to each of those above referred to, an exception is noted by him to the refusal of the court.   The case thus settled is conclusive. (*Hunt* v. *Bloomer*, 13 N. Y. 341.)

We think the exceptions were well taken.   Upon the first appeal, no record evidence of the defendant's action in relation to the first, or second, or other sidewalk was produced, but it was assumed that both the original construction of the walk and its change were designed by the defendant, and while, as was then said, " There was some evidence on the part of the plaintiff tending to show that the new walk was steeper than the old one, it was not very clear what the difference was, or that the change was of a radical character ; the old plan was followed substantially in the building of the new walk." (91 N. Y. 67.)

And our decision was put upon the ground that as the original plan required the exercise of judicial discretion in establishing the grade, it must be assumed that such discretion was also exercised in carrying out the plan in laying down and constructing the new walk; and, as the action of the plaintiff could not be maintained upon the ground that the original plan was defective, it was not apparent in what way it could be upheld by reason of the alleged change in the grade.

In substance, that as both proceedings were within the judicial discretion of the defendant, negligence could not be asserted upon the plan itself, and if there are remarks in the opinion of the learned judge who prepared the opinion for the court on that occasion, which seem to go further, they must be taken with the facts then appearing, in which there was no substantial or unauthorized departure from the original plan, nor any negligence or fault in the construction of the walk, or its condition, which made the way dangerous for travel. These circumstances now appear. Nor are we able to find evidence that the common council assented to the change. It may be conceded that as that body might design a plan, so they might by proper action adopt a walk already constructed, and in that way secure to the city the same immunity. But this must be indicated by formal corporate action. Neither knowledge of individual members of that body that a change has been made, nor the omission of the body itself to object, can take its place. Power is conferred upon the authorities of the city to direct the manner of, and superintend the making and repairing of sidewalks. (Laws of 1868, vol. 1, chap. 335, § 20, subd. 12; Laws of 1873, chap. 406, § 17, subd. 12.) But its exercise is not left to their discretion, it is imposed upon them as a duty (§ 20). Over certain other matters they are given discretionary powers (§ 21), but as to this the language is imperative (§ 20), viz.: "It shall be the duty of the common council, and they shall have the power." So the charter prescribes the manner in which its action shall be made known. It declares that "it shall only transact business as a board sit-

ting in public (id., § 17), and that all its acts shall be entered on the city journal. (Id.)

It is said by the respondent, that under section 26 of the charter, by which the common council "have the power to cause any sidewalk to be raised, leveled, graded, flagged, or planked in such manner and with such materials as they may deem proper," sidewalks previously built are included, and he argues that under it the common council had the power to order the old sidewalk to be rebuilt on a new plan. This has been conceded. But the same section declares that its action in this respect shall be authorized by a vote of two-thirds of all the members thereof, and while lot-owners may be permitted to work out the improvement so ordered, it can only be after notice by the common council specifying the improvement to be made, of what material, and the manner in which they require the same to be done (§ 26). These are matters of record, and none of them appears to have been observed. On the contrary, the very omission of the common council to do its duty in respect to the walk in question has been received in place of such observance. So that the neglect of a statutory duty has been held to be corporate acquiescence in, or adoption of, a walk which it did not authorize, and of which it took no notice until brought into court to answer for negligence in permitting an unfit and dangerous way to incumber the street which it was bound to make safe for travel.

The practice of the common council, if such there was, of allowing owners of sidewalks to rebuild them without affirmative action on its part, and to omit all notice of such proceeding unless the work was unsatisfactory, cannot take the place of the formal legislative proceedings which the charter requires, nor be an answer to the claim of one injured in consequence of defects of which the city had notice; nor can a disregard of such notice be considered a judicial adoption of the plan by reason of which they were occasioned. On the contrary, it would be a denial of justice if a court did not hold that these defects and conceded notice of them to the city were to be considered as elements going to make up a cause of action.

(*Clemence* v. *City of Auburn*, 66 N. Y. 334; *Saulsbury* v. *Village of Ithaca*, 94 id. 27.)

Without referring to other exceptions, we think those already mentioned should be sustained, and they require a new trial.

The judgment appealed from is, therefore, reversed and a new trial granted.

RUGER, Ch. J., RAPALLO and ANDREWS, JJ., concur; MILLER, EARL and FINCH, JJ., dissent.

Judgment reversed.